EG/JRS:PJC/LS
F. #2025R00122

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
* JUNE 12, 2026 *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

SHAZIA BIBI,
      also known as "Shazia Wattoo,"
PERVEZ SIDDIQUI,
ABDUL AZIZ,
ZEBUN AHMED,
SHAIR ALI,
JOSNA BEGUM,
SAIRA KHATOON and
ATIA SHAHNAZ,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**I N D I C T M E N T**

Cr. No. __26-CR-175__
(T. 18, U.S.C., §§ 371, 982(a)(1),
982(a)(7), 982(b)(1), 1349, 1956(h), 2
and 3551 et seq.; T. 21, U.S.C., § 853(p);
T. 42, U.S.C., §§ 1320a-7b(b)(1)(A) and
1320a-7b(b)(2)(A))

Judge Dora Lizette Irizarry
Magistrate Judge Taryn A. Merkl

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

### I.    Medicaid

1.     Medicaid was a federal and state health care program that provided benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services, was responsible for overseeing Medicaid in participating states, including New York State. Individuals who received benefits under Medicaid were referred to as "recipients."

2.      Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and as referenced in Title 18, United States Code, Section 1347, and a "Federal health care program," as defined in Title 42, United States Code, Section 1320a-7b.

3.      Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965. Each state established and administered its own Medicaid program and determined the type, amount, duration and scope of services covered within broad federal guidelines.

4.      Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim, the provider certified, among other things, that the services were rendered to the patient and were medically necessary, and were not rendered as a result of kickbacks or bribes.

5.      Medicaid in New York State ("New York Medicaid") was administered by the New York State Department of Health (the "New York DOH"). The New York DOH approved certain managed long-term care ("MLTC") plans to provide managed care to New York Medicaid recipients with long-lasting health issues or disabilities. Each MLTC plan had its own network of health care providers. New York Medicaid managed care providers who were within an MLTC network did not bill Medicaid directly, but instead billed the MLTC plan for services provided to their recipients.

6.      New York Medicaid MLTC services included social adult day care services.   The term "social adult day care" ("SADC") described a structured program that provided older adults with functional impairments socialization, supervision, personal care and nutrition services in a protective setting.   An SADC center would, for example, provide a space where its members can congregate and socialize by talking, playing card or board games, listen to music, sing karaoke or participate in other activities under the supervision of SADC center staff who are trained to provide assistance to people with mobility and other health issues. Healthy meals, as well as transportation to and from the day care, may have also been provided.

7.      Medicaid and the MLTC plans paid for claims only if the items or services were medically reasonable, medically necessary, documented, provided as represented and not induced by illegal kickbacks and bribes.

II.     The Defendants and Relevant Entities and Individuals

8.      Apna Adult Daycare of Brighton LLC ("Apna") was an SADC center located in Brooklyn, New York.   Apna was registered as a New York Medicaid managed care provider and was a provider of SADC services for New York Medicaid MLTC plans.   Apna maintained a bank account ending in 5819 (the "Apna x5819 Account") at Financial Institution-1, an entity the identity of which is known to the Grand Jury.

9.      Ashiana Social Adult Daycare Inc. ("Ashiana") was an SADC center located in Brooklyn, New York.   Ashiana was registered as a New York Medicaid managed care provider and was a provider of SADC services for New York Medicaid MLTC plans.   Ashiana maintained a bank account ending in 7713 (the "Ashiana x7713 Account") at Financial Institution-2, an entity the identity of which is known to the Grand Jury.

4

10.    The defendant SHAZIA BIBI, also known as Shazia Wattoo, was a co-owner of Apna and exercised control over Ashiana.   BIBI was a signatory on the Apna x5819 Account, as well as a bank account ending in 8594 (the "Bibi x8594 Account") at Financial Institution-3, an entity the identity of which is known to the Grand Jury.

11.    The defendant PERVEZ SIDDIQUI was a co-owner of Apna and exercised control over Ashiana.   SIDDIQUI was a signatory on the Apna x5819 Account.

12.    The defendant ABDUL AZIZ was an owner of Ashiana.   AZIZ was a signatory on the Ashiana x7713 Account.

13.    The defendant ZEBUN AHMED was a marketer and recruiter for Apna and Ashiana.   AHMED was an owner of Proficient Plus Corp. ("Proficient Plus"), which maintained a bank account ending in 4342 (the "Proficient Account") at Financial Institution-4, an entity the identity of which is known to the Grand Jury.   AHMED was a signatory on the Proficient Account.

14.    The defendant SHAIR ALI was an Apna and Ashiana employee.

15.    The defendant JOSNA BEGUM was a marketer and recruiter for Apna and Ashiana.   BEGUM was an owner of Josna & Juthi Associates Inc. ("Josna & Juthi"), which maintained a bank account ending in 6277 at Financial Insitution-2 (the "Josna & Juthi Account").   BEGUM was a signatory on the Josna & Juthi Account.

16.    The defendant SAIRA KHATOON was a marketer and recruiter for Apna and Ashiana.   KHATOON was an owner of S & J Family Corp. ("S & J"), which maintained a bank account ending in 0513 (the "S & J Account") at Financial Institution-5, an entity the identity of which is known to the Grand Jury.   KHATOON was a signatory on the S & J Account.

5

17.    The defendant ATIA SHAHNAZ was a marketer and recruiter for Apna and Ashiana.  SHAHNAZ was an owner of Ata Corporation.

18.    Co-Conspirator-1, an individual whose identity is known to the Grand Jury, worked for Ashiana.

19.    Individual-1, an individual whose identity is known to the Grand Jury, was a marketer and recruiter for Ashiana.

20.    MLTC Plan-1, an entity the identity of which is known to the Grand Jury, was an MLTC plan that operated in New York.

III.    The Fraudulent Scheme

21.    In or about and between 2019 and December 2025, the defendants SHAZIA BIBI, PERVEZ SIDDIQUI, ABDUL AZIZ, ZEBUN AHMED, SHAIR ALI, JOSNA BEGUM, SAIRA KHATOON and ATIA SHAHNAZ, together with others, engaged in a scheme whereby they (a) paid kickbacks and bribes, including in the form of cash, to New York Medicaid recipients to induce them to enroll in SADC services at Apna and Ashiana, (b) paid kickbacks and bribes to induce recruiters to refer New York Medicaid recipients to enroll with Apna and Ashiana, (c) received kickbacks and bribes in exchange for the referral of New York Medicaid recipients to Apna and Ashiana, and (d) submitted and caused the submission of false and fraudulent claims to New York Medicaid MLTC plans for SADC services at Apna and Ashiana that were not provided as represented and/or were induced by the payment and receipt of illegal kickbacks and bribes.

22.    In furtherance of the scheme, the defendants PERVEZ SIDDIQUI and ABDUL AZIZ, together with others, signed contracts and related documents with MLTC plans, including MLTC Plan-1, to register Apna and Ashiana as SADC service providers.   In these

agreements, SIDDIQUI and AZIZ agreed to comply with all applicable laws and regulations. For example, in approximately December 2016, SIDDIQUI agreed to "comply with all local, Federal and State laws and regulations . . . including, but not limited to, those prohibiting . . . making referrals for certain medical services . . . ."

23.     Most of the New York Medicaid recipients enrolled at Apna and Ashiana were paid illegal cash kickbacks and bribes and did not actually visit Apna and Ashiana on the purported dates of service as claimed to New York Medicaid and the MLTC plans.   In some instances, the New York Medicaid recipients were outside the United States on the purported dates of service.   On certain dates, Apna submitted claims for SADC services in volumes that exceeded the certificate of occupancy of Apna.

24.     In furtherance of the scheme, the defendant PERVEZ SIDDIQUI hired the defendant SHAIR ALI, who managed billing for Apna and Ashiana using staff located in Pakistan.

25.     In exchange for illegal kickbacks and bribes, the defendants ZEBUN AHMED, JOSNA BEGUM, SAIRA KHATOON and ATIA SHAHNAZ referred New York Medicaid recipients to Apna and/or Ashiana.   As marketers and recruiters, AHMED, BEGUM, KHATOON and SHAHNAZ were responsible for ensuring the completion of fictitious sign-in sheets that falsely indicated that the New York Medicaid recipients they referred had attended Apna and/or Ashiana, when, in fact, the New York Medicaid recipients had not attended Apna and/or Ashiana.   In some instances, Apna and Ashiana staff, including the defendant SHAZIA BIBI, falsified attendance records.

26.     In or about and between July 2025 and September 2025, the defendant ABDUL AZIZ, together with others, paid Individual-1 illegal kickbacks and bribes in return for

permitting Ashiana to bill an MLTC plan for SADC services for Individual-1's parents that were not provided, including because Individual-1's parents were located outside of the United States at the time.

27.    To promote the scheme and conceal the proceeds derived from it, the defendants SHAZIA BIBI, PERVEZ SIDDIQUI, ABDUL AZIZ, ZEBUN AHMED, JOSNA BEGUM, SAIRA KHATOON and ATIA SHAHNAZ, together with others, engaged in financial transactions involving proceeds from the scheme to defraud New York Medicaid and the MLTC plans, by using various shell business entities to disguise their receipt and payment of illegal kickbacks and bribes.   For example, to obtain cash for paying New York Medicaid recipients illegal kickbacks and bribes and for paying marketers and recruiters illegal kickbacks and bribes, BIBI, SIDDIQUI and AZIZ wrote checks from the accounts of Apna and Ashiana to business entities, including: Josna & Juthi, which AHMED controlled; Proficient Plus, which BEGUM controlled; S & J, which KHATOON controlled; and Ata Corporation, which SHAHNAZ controlled.   Certain payments were disguised as gifts to conceal the fact that they were illegal kickbacks.   Kickbacks to SADC members were also disguised through the use of codewords, including "medicine" and "laddu" (an Indian sweet), and on ledgers that noted, for example, "3C" for $300.

28.    In or about and between 2019 and December 2025, the defendants SHAZIA BIBI, PERVEZ SIDDIQUI, ABDUL AZIZ and SHAIR ALI caused Apna and Ashiana to submit claims to New York Medicaid and MLTC plans in the amount of approximately $38 million for services that were not provided, were not provided as billed and/or were induced by the payment of illegal cash kickbacks and bribes.   New York Medicaid and MLTCs paid Apna and Ashiana approximately $38 million based on these false and fraudulent claims.

8

29.     Following the execution of a federal search warrant by federal law enforcement at Apna and Ashiana in approximately December 2025, the defendants SHAZIA BIBI, PERVEZ SIDDIQUI and SHAIR ALI sought to conceal the unlawful scheme.   BIBI and SIDDIQUI instructed staff to obtain new cellphones, and ALI instructed an Apna staff member to delete the contents of their cellphone.

COUNT ONE
(Conspiracy to Commit Health Care Fraud)

30.     The allegations contained in paragraphs one through 29 are realleged and incorporated as if fully set forth in this paragraph.

31.     In or about and between 2019 and December 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHAZIA BIBI, also known as "Shazia Wattoo," PERVEZ SIDDIQUI, ABDUL AZIZ and SHAIR ALI, together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud any health care benefit program as defined in Title 18, United States Code, Section 24(b), to wit: New York Medicaid, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, New York Medicaid, all in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Conspiracy to Defraud the United States and Offer, Pay, Solicit, and Receive Health Care Kickbacks)

32.     The allegations contained in paragraphs one through 29 are realleged and incorporated as if fully set forth in this paragraph.

9

33.    In or about and between 2019 and December 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHAZIA BIBI, also known as "Shazia Wattoo," PERVEZ SIDDIQUI, ABDUL AZIZ, ZEBUN AHMED, SHAIR ALI, JOSNA BEGUM, SAIRA KHATOON and ATIA SHAHNAZ, together with others, did knowingly and willfully conspire:

(a)    to defraud the United States by cheating the United States government and any of its departments and agencies out of money and property, and by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of CMS, an agency of the United States, in its administration and oversight of New York Medicaid;

(b)    to solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring one or more individuals, to wit: New York Medicaid recipients, for the furnishing and arranging for the furnishing of one or more items and services for which payment may be made in whole and in part under a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A);

(c)    to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such persons to refer one or more individuals, to wit: New York Medicaid recipients, for the furnishing and arranging for the furnishing of one or more items and services for which

10

payment may be made in whole and in part under a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

(d)     to offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such persons to purchase, lease, order and arrange for and recommend purchasing, leasing and ordering one or more goods, facilities, services and items for which payment may have been made in whole and in part under a Federal health care program, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(B).

34.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants SHAZIA BIBI, also known as "Shazia Wattoo," PERVEZ SIDDIQUI, ABDUL AZIZ, ZEBUN AHMED, SHAIR ALI, JOSNA BEGUM, SAIRA KHATOON and ATIA SHAHNAZ, together with others, did commit and cause the commission of, among others, at least one of the following:

<u>OVERT ACTS</u>

(a)     On or about October 8, 2021, SIDDIQUI signed an application submitted to MLTC-1 for the enrollment of Apna to provide SADC services.

(b)     On or about August 12, 2022, BIBI wrote check #1062 from the Bibi x8594 Account to SHANAZ in the amount of $10,000.

(c)     On or about August 31, 2022, SIDDIQUI signed a letter written to MLTC Plan-1 that falsely "denie[d] providing day care members with any cash payments or inducements."

(d)     On or about May 18, 2024, SIDDIQUI wrote check #3841 from the Apna x5819 Account to AHMED in the amount of $4,200.

(e)     On or about August 25, 2024, AZIZ wrote check #1263 from the Ashiana x7713 Account to himself in the amount of $15,000 and with the memo line "Dividend."

(f)     On or about September 9, 2024, BIBI wrote check #3144 from the Apna x5819 Account to Josna & Juthi in the amount of $20,425 and with the memo line "Aug. 2024."

(g)     On or about September 18, 2024, BIBI wrote check #3185 from the Apna x5819 Account to SIDDIQUI in the amount of $50,000.

(h)     On or about September 18, 2024, BIBI wrote check #3186 from the Apna x5819 Account to herself in the amount of $50,000.

(i)     On or about April 2, 2025, SIDDIQUI wrote check #3749 from the Apna x5819 Account to S & J in the amount of $6,900.

(j)     On or about November 4, 2025, ALI sent a WhatsApp message to Co-Conspirator-1 that said, "Total received 40000 Total delivered 29000 Commission 4000 Remaining 7000."

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNTS THREE THROUGH SEVEN
(Paying Health Care Kickbacks)

35.     The allegations contained in paragraphs one through 29 are realleged and incorporated as if fully set forth in this paragraph.

36.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants SHAZIA BIBI, also known as "Shazia Wattoo," PERVEZ SIDDIQUI and SHAIR ALI, together with others, did knowingly and willfully offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in

cash and in kind, to one or more persons, to wit: marketers and recruiters for Apna and Ashiana, in return for referring one or more individuals, to wit: New York Medicaid recipients, for the furnishing and arranging for the furnishing of one or more items and services for which payment may have been made in whole and in part under a Federal health care program, to wit: New York Medicaid, as set forth below:

| Count | Defendant | Approximate Date | Description |
|-------|-----------|------------------|-------------|
| THREE | BIBI | August 12, 2022 | Check #1062 for $10,000 from the Bibi x8594 Account to the defendant ATIA SHAHNAZ and signed by BIBI |
| FOUR | SIDDIQUI | May 18, 2024 | Check #3841 for $4,200 from the Apna x5819 Account to the defendant ZEBUN AHMED and signed by SIDDIQUI |
| FIVE | BIBI | September 9, 2024 | Check #3144 for $20,425 from the Apna x5819 Account to Josna & Juthi with the memo "Aug 2024" and signed by BIBI |
| SIX | SIDDIQUI | April 2, 2025 | Check #3749 for $6,900 from the Apna x5819 Account to S & J and signed by SIDDIQUI |
| SEVEN | ALI | November 4, 2025 | Payment of approximately $4,000 to Co-Conspirator-1 |

(Title 42, United States Code, Section 1320a-7b(b)(2)(A); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNTS EIGHT THROUGH ELEVEN
(Receiving Health Care Kickbacks)

37.    The allegations contained in paragraphs one through 29 are realleged and incorporated as if fully set forth in this paragraph.

13

38.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants ZEBUN AHMED, JOSNA BEGUM, SAIRA KHATOON and ATIA SHAHNAZ, together with others, did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring one or more individuals, to wit: New York Medicaid recipients, for the furnishing and arranging for the furnishing of one or more items and services for which payment may have been made in whole and in part under a Federal health care program, to wit: New York Medicaid, as set forth below:

| Count | Defendant | Approximate Date | Description |
|---|---|---|---|
| EIGHT | SHAHNAZ | August 12, 2022 | Check #1062 for $10,000 from the Bibi x8594 Account to SHAHNAZ and signed by the defendant SHAZIA BIBI, also known as "Shazia Wattoo" |
| NINE | AHMED | May 18, 2024 | Check #3841 for $4,200 from the Apna x5819 Account to AHMED and signed by the defendant PERVEZ SIDDIQUI |
| TEN | BEGUM | September 9, 2024 | Check #3144 for $20,425 from the Apna x5819 Account to Jashna + Johti with the memo "Aug 2024" and signed by the defendant SHAZIA BIBI, also known as "Shazia Wattoo" |
| ELEVEN | KHATOON | April 2, 2025 | Check #3749 for $6,900 from the Apna x5819 Account to S & J and signed by the defendant PERVEZ SIDDIQUI |

(Title 42, United States Code, Section 1320a-7b(b)(1)(A); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT TWELVE
### (Conspiracy to Commit Money Laundering)

39.     The allegations contained in paragraphs one through 29 are realleged and incorporated as if fully set forth in this paragraph.

40.     In or about and between 2019 and December 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHAZIA BIBI, also known as "Shazia Wattoo," PERVEZ SIDDIQUI, ABDUL AZIZ, ZEBUN AHMED, JOSNA BEGUM, SAIRA KHATOON and ATIA SHAHNAZ, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: acts and activities constituting an offense involving a Federal health care offense, in violation of Title 18, United States Code, Sections 371, 1347 and 1349, and Title 42, United States Code, Sections 1320a-7b(b)(1)(A), (b)(2)(A) and (b)(2)(B), knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of one or more such specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE THROUGH ELEVEN

41.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Eleven, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which

requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense, including but not limited to:

(a)    approximately $8,874.43 seized by law enforcement on or about December 12, 2025, from Bank of America account number ending in 7689 held in the name of or for the benefit of Pervez Siddiqui and Lily Bibi, and all proceeds traceable thereto;

(b)    approximately $58,532.71 seized by law enforcement on or about January 12, 2026, from Capital One NA account number ending in 5819 held in the name of or for the benefit of Apna Adult Daycare of Brighton LLC, and all proceeds traceable thereto;

(c)    approximately $8,427.32 seized by law enforcement on or about January 12, 2026, from Capital One NA account number ending in 9745-SAV held in the name of or for the benefit of Pervez Siddiqui and Shazia Bibi, and all proceeds traceable thereto;

(d)    approximately $45,907.81 seized by law enforcement on or about January 12, 2026, from Capital One NA account number ending in 4902 held in the name of or for the benefit of Pervez Siddiqui and Shazia Bibi, and all proceeds traceable thereto;

(e)    approximately $9,346.85 seized by law enforcement on or about December 8, 2025, from J.P. Morgan Chase, N.A. account number ending in 7713 held in the name of or for the benefit of Ashiana Social Adult Day Care Inc., and all proceeds traceable thereto;

(f)    approximately $20,750.37 seized by law enforcement on or about January 16, 2026, from TD Bank N.A. account number ending in 6550 held in the name of or for the benefit of Pervez Siddiqui, and all proceeds traceable thereto; and

(g)    approximately $5,653.00 in United States currency seized by law enforcement on or about December 15, 2025, in Brooklyn, New York, and all proceeds traceable thereto.

42.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TWELVE

43.    The United States hereby gives notice to the defendants charged in Count Twelve that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person

convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to:

(a)     approximately $8,874.43 seized by law enforcement on or about December 12, 2025, from Bank of America account number ending in 7689 held in the name of or for the benefit of Pervez Siddiqui and Lily Bibi, and all proceeds traceable thereto;

(b)     approximately $58,532.71 seized by law enforcement on or about January 12, 2026, from Capital One NA account number ending in 5819 held in the name of or for the benefit of Apna Adult Daycare of Brighton LLC, and all proceeds traceable thereto;

(c)     approximately $8,427.32 seized by law enforcement on or about January 12, 2026, from Capital One NA account number ending in 9745-SAV held in the name of or for the benefit of Pervez Siddiqui and Shazia Bibi, and all proceeds traceable thereto;

(d)     approximately $45,907.81 seized by law enforcement on or about January 12, 2026, from Capital One NA account number ending in 4902 held in the name of or for the benefit of Pervez Siddiqui and Shazia Bibi, and all proceeds traceable thereto;

(e)     approximately $9,346.85 seized by law enforcement on or about December 8, 2025, from J.P. Morgan Chase, N.A. account number ending in 7713 held in the name of or for the benefit of Ashiana Social Adult Day Care Inc., and all proceeds traceable thereto;

(f)     approximately $20,750.37 seized by law enforcement on or about January 16, 2026, from TD Bank N.A. account number ending in 6550 held in the name of or for the benefit of Pervez Siddiqui, and all proceeds traceable thereto; and

18

(g)    approximately $5,653.00 in United States currency seized by law enforcement on or about December 15, 2025, in Brooklyn, New York, and all proceeds traceable thereto.

44.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty,

19

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

/s/
FOREPERSON

By David Pitluck, Assistant U.S. Attorney
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

by Patrick J. Campbell, Trial Attorney
LORINDA LARYEA
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE